```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
JIAN ZHONG LI,                                                  :
                                                                :
                                   Plaintiff,                   :
                                                                :
                  -against-                                     :
                                                                :
OLIVER KING ENTERPRISES, INC. d/b/a                             :
EMPIRE SZECHUAN VILLAGE, OSCAR KING                             :
a/k/a OSCAR I-HSIKING and JIAN GUO WANG,                        :
                                                                :
                                   Defendants.                  :
-------------------------------------------------------------- X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/04/2015
```

14-CV-9293 (VEC)

MEMORANDUM
OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Jian Zhong Li ("Plaintiff") brings this action against Defendants Oliver King Enterprises, Inc. d/b/a Empire Szechuan Village ("Empire Szechuan"), Oscar King a/k/a Oscar I-Hsiking ("King"), and Jian Guo Wang ("Wang") (collectively, the "Defendants"), alleging violations of the anti-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) ("FLSA") and the New York Labor Law § 215 ("NYLL").  Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes Defendants' Motion to Dismiss and requests leave to amend his Complaint. For the following reasons, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's request to amend the Complaint is DENIED.

## BACKGROUND[1]

Defendant King is the Chief Executive Officer of Empire Szechuan, a Chinese restaurant in lower Manhattan.  Compl. ¶¶ 8-9.  Plaintiff Li worked as a sushi chef at Empire Szechuan from April 27, 2005 until September 30, 2013.  *Id.* ¶ 12-13.  Defendant Wang worked for King

---

[1]  All facts are taken from the Complaint except as otherwise indicated.

and Empire Szechuan as a deliveryman. *Id.* ¶ 11. On October 18, 2013, Plaintiff sued King and Empire Szechuan alleging violations of the FLSA and NYLL. *Id.* ¶ 14; *see also* Complaint, *Li v. Oliver King Enterprises, Inc. et al.*, 13-CV-7372 (VEC) (S.D.N.Y. Oct. 18, 2013), Dkt. 1. More than a year later, on November 11, 2014, Plaintiff received six or seven calls to his cellphone, which he did not answer, and a series of text messages from Wang, to which he did not respond. Compl. ¶¶ 17-21. Wang's text messages stated that King had asked him to contact Plaintiff about settling the FLSA lawsuit. Defs.'s Mem., Ex. A.[2] Wang asked Li to make an offer, but also stated: "If you do not want to settle privately, you can tell me. Just meet me once, I promise you not interfering into this matter anymore." *Id.* A second text message pleaded that "he [Oscar King] wants me to intercede for him, and it is hard for me to say no to him. You just meet me once, give me a figure, or tell me you do not want to settle privately. So I can pass just this message to him." *Id.* Wang's second text also indicated that he would visit Plaintiff at his home if Plaintiff did not answer his calls or text messages. *Id.* Plaintiff did not respond to Wang's communications, even to say that he did not wish to settle the FLSA lawsuit. Compl. ¶¶ 17-21. At 5:30 p.m. that day, while Plaintiff was away from home, someone appeared outside of Plaintiff's home, took pictures, and talked with Plaintiff's neighbors. *Id.* ¶¶ 25-26. There is no allegation that the person knocked on the door or rang the bell or otherwise tried to make contact with the occupants of Plaintiff's home. Nevertheless, the visit of the unknown person, who might have been Wang, frightened Plaintiff's wife and daughter, who were home at the time. *Id.* ¶ 27.

---

[2]   Although the Complaint stated that it attached as Exhibit A the offending text messages and translations of them, Compl. ¶ 20, there was no Exhibit A to the Complaint. The Defendants attached copies of two text messages and translations of those texts as exhibits to their Memorandum in Support of the Motion to Dismiss. In his proposed Amended Complaint, ¶¶ 24-28, Plaintiff cited the same texts and translations from the Motion for a Temporary Restraining Order that he filed on the docket in his related FLSA case. *See Li v. Oliver King Enterprises*, 13-CV-7372 (VEC) (S.D.N.Y. Nov. 12, 2013), Dkt. 33.1.

On November 21, 2014, Plaintiff filed the instant Complaint alleging that Wang's unsolicited communications and visit to Plaintiff's home constitute harassment amounting to unlawful retaliation under the FLSA and NYLL.[3]  *Id.* ¶ 1.  Defendants moved to dismiss the Complaint on January 30, 2015.  Plaintiff opposed Defendants' Motion to Dismiss but also sought leave to file an Amended Complaint ("Am. Compl.").[4]

## DISCUSSION

**I.     Plaintiff Fails to State a Plausible Claim on Which Relief Could Be Granted**

### A. Standard of Review

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 217, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555-56 (2007)).  A plaintiff "must provide grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Courts must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013) (quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).  Furthermore, courts are generally confined to "the four corners of the complaint" and must "look only to the allegations contained therein."  *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-

---

[3]    Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss erroneously states that Plaintiff filed his Complaint on December 31, 2014.  Dkt. 16 at 2.

[4]    The Court's Individual Rules provide that "[i]f a motion to dismiss is filed, the Plaintiff . . . has a right to amend its pleadings within twenty-one days . . . . If the Plaintiff . . . elects not to amend its pleading, the motion will proceed in the normal course . . . . Filing a response to [a motion to dismiss] will be treated as an election not to amend the pleading."  Individual Rule 3.E.  It is not clear why Plaintiff thought it was appropriate to both respond to the motion to dismiss and seek leave to file an Amended Complaint.

6091(ER), 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

### B. Requirements for a Retaliation Claim Under the FLSA[5]

The FLSA anti-retaliation provision makes it unlawful for "any person" "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under . . . this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. § 215(a)(3). In order to establish a prima facie case of retaliation, the plaintiff must show "(1) participation in a protected activity known to the defendant, like the filing of a[n] FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "[T]o allege a claim under the FLSA, a plaintiff must plead facts showing a prima facie case of retaliation." *Wang v. Palmisano*, 51 F. Supp. 3d 521, 538 (S.D.N.Y. 2014) (citations and internal quotation marks omitted). At the pleading stage, however, "the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint." *Brundidge v. Xerox Corp.*, No. 12–CV–6157, 2014 WL 1323020(FPG), at *3 (W.D.N.Y. Mar. 31, 2014).

---

[5] Both Plaintiff and Defendants have argued that the requirements of a prima facie case under the FLSA and the NYLL are substantially the same. Pl.'s Opp. at 3; Defs.' Mem. at 4. The language of NYLL § 215 ("discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee"), is, however, somewhat broader than that of the corresponding FLSA anti-retaliation provision, 29 U.S.C. § 215(a)(3) ("discharge or in any other manner discriminate against any employee"). Because dismissing the claim that is brought under FLSA will remove the basis for the Court's subject matter jurisdiction and the Court will not exercise its discretion to retain jurisdiction of the supplemental NYLL claim, it is not necessary to determine whether the standards for a prima facie case of retaliation are substantively identical under the FLSA and NYLL.

In this case, Plaintiff has adequately alleged that he engaged in protected activity by filing an FLSA lawsuit and that his protected activity caused the "retaliation" about which he complains.[6] The second prong is, however, more problematic. Considering all the facts alleged in the Complaint and in the proposed Amended Complaint in the light most favorable to the Plaintiff, he has not alleged facts that rise to the level of "an employment action disadvantaging the [P]laintiff." *Mullins*, 626 F.3d at 53.

Most cases involving the anti-retaliation provisions of the FLSA involve adverse employment actions that occur while the plaintiff is still employed by the defendant. *See, e.g.*, *Mullins*, 626 F.3d at 54 (police officers disadvantaged by internal affairs investigations after participating in FLSA case); *see also* Defs.' Mem. at 4-5. In the context of Title VII's anti-retaliation provision, the Supreme Court has held that the term "employees" also includes former employees, as this interpretation serves "a primary purpose of anti-retaliation provisions: Maintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (citation omitted).[7] More recently, the Supreme Court has held that the scope of the Title VII anti-retaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67 (2006).

*Robinson* and *Burlington Northern* are relevant to this case because judicial interpretations of Title VII's anti-retaliation provision have influenced the way courts in this

---

[6] Plaintiff argues that causation is adequately alleged because Wang's communications explicitly demonstrate a causal connection to Plaintiff's filing of the FLSA lawsuit, a protected activity. Pl.'s Opp. at 4. Because Wang would not have sent the messages or traveled to Plaintiff's home but for Plaintiff's lawsuit, a causal connection exists.

[7] Even before *Robinson*, the Second Circuit had allowed former employees to bring retaliation claims under Title VII when the alleged retaliation involved harm to their future employment prospects. *See, e.g.*, *Pantchenko v. C. B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir. 1978) (plaintiff's former employer denied letter of recommendation and made disparaging comments about plaintiff to other employers).

Circuit analyze FLSA retaliation claims.  Although many courts have continued to use the phrase "materially adverse *employment* action" in describing the requirements for a prima facie case of retaliation under the FLSA, *Mullins*, 626 F.3d at 53 (emphasis added), district courts in this Circuit have applied the Supreme Court's reasoning in *Robinson* to FLSA retaliation claims, finding that in some circumstances plaintiffs can bring retaliation claims against former employers for post-employment conduct.  *See, e.g.*, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008); *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013).  Additionally, the Second Circuit has applied the "might have dissuaded" standard from *Burlington Northern* to FLSA retaliation claims.  *Mullins*, 626 F.3d at 53.

For purposes of this motion, the Court assumes that the FLSA anti-retaliation provision extends to an action taken by a prior employer if that action would have the effect of dissuading a reasonable employee from pursuing FLSA relief.[8]  The scope of post-employment conduct that does not have a direct connection to the former employee's employment prospects that has been recognized in this Circuit as potential unlawful retaliation under FLSA is, nonetheless, relatively narrow.  Courts have held that instituting bad faith or groundless counterclaims or instituting bad faith litigation against the employee constitutes actionable retaliation.  *Gristede's*, 628 F. Supp. 2d at 473; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 740 (1983); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *Flores*, 942 F. Supp. 2d at 279; *Jacques v. DiMarzio*, 200 F. Supp. 2d 151, 162–63 (E.D.N.Y. 2002).  "[B]aseless claims," regardless of their effect on a plaintiff's employment, "are actionable retaliation precisely because of their *in*

---

[8] Both Plaintiff and Defendants have assumed that a defendant's conduct does not need to be employment-related to constitute retaliation under the FLSA.  Defs.' Mem. at 4; Pl.'s Opp. at 3 (citing *Gristede's*, 628 F. Supp. 2d at 472 and *Burlington N.*, 548 U.S. at 68).

6

*terrorem* effect." *Gristede's*, 628 F. Supp. 2d at 472-73. Similarly, in *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 136 (W.D.N.Y. 2003), the plaintiffs claimed that defendant retaliated against them for filing an FLSA action by reporting them to the Immigration and Naturalization Service as terrorists. Because that sort of a claim to a government agency has potentially significant adverse consequences, it would discourage a reasonable person from acting to protect their FLSA rights and was held to be sufficient to state a claim for FLSA retaliation. *Id.* at 137.

Plaintiff has not cited a single post-employment retaliation case from this Circuit or elsewhere that did not involve either employment-related harm or a threatened legal claim against the plaintiff, and the Court has found none. Plaintiff's allegations, therefore, do not fall into a category of retaliation that has heretofore been recognized in this Circuit.

Even if the Court were to assume that *any* kind of harmful conduct could constitute unlawful FLSA retaliation, the facts alleged by Plaintiff simply do not support his conclusory statement that "[a] reasonable employee may have been dissuaded from filing a[n] FLSA charge against his employer if he knew that he and his family would be harassed in this way." Pl.'s Opp. at 3.

Drawing all inferences in Plaintiff's favor, Wang, at the instigation of King, made a series of telephone calls and sent several text messages to Plaintiff before visiting the vicinity of Plaintiff's home without invitation. Wang's stated purpose for these actions was to discuss a settlement of Plaintiff's FLSA claims. Plaintiff never responded to Wang or directed Wang not to contact him, even though Wang's text message explicitly said that if Li was not interested in talking about a private settlement he should just say so. The Court has found no case – and the Plaintiff has cited none – in the Title VII or FLSA context, in which the Court has found that "harassment" is adequately alleged on facts as thin as these. While the Court does not condone King's decision to dispatch a deliveryman from the restaurant to approach his adversary in this

7

way, Wang's telephone calls were placed during the day, were unanswered and were not so numerous as to be harassing. The text messages also fall short any reasonable definition of the term "harassment." They too were sent during the day, and they invited Li to say he was not interested if he was not. While the Court accepts that Li found Wang's persistence to be off-putting, the anti-retaliation laws are not civility codes. *Cf. Burlington N.*, 548 U.S. at 68 ("Title VII . . . does not set forth a general civility code for the American workplace") (internal quotation marks omitted). Neither the content nor context of Wang's texts was so harassing or threatening that they constitute the basis for a retaliation claim.

Finally, as Defendants point out, a defendant's eagerness to settle an FLSA claim for a sum of money is more likely to encourage an employee to bring an FLSA case than dissuade him from doing so. Defs.' Mem. at 9. While Defendants' attempts to settle Plaintiff's FLSA claims may have been overly aggressive, without more, Defendants' actions do not qualify as retaliation as that provision has been interpreted by courts in this Circuit.

Because the Court must apply the standard of what would dissuade a "*reasonable* worker from making or supporting similar charges," Plaintiff's subjective reaction to Defendants' conduct is not dispositive. *Mullins*, 626 F.3d at 53 (emphasis added). Even assuming that some number of phone calls, text messages, and appearances outside a plaintiff's home could be sufficiently harassing to dissuade a reasonable employee from bringing an FLSA claim, the Defendants' conduct in this case does not even approach that level.

**II.        Plaintiff's Amendment of the Complaint Would Be Futile**

As a general rule, a "court should freely give leave [to amend a Complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Notwithstanding the liberality of the general rule, [w]hether to allow amendment is a decision that rests in the discretion of the district court." *Lincoln v. Potter*, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006) (citations omitted) (internal

8

quotation marks omitted).  One reason for denying leave to amend is the "futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

      Plaintiff's amendment to the Complaint would be futile.  The proposed Amended Complaint differs from the original complaint in only a few respects, none of which is material.  First, Plaintiff attempts to bolster his case against Wang by specifically alleging that Wang may have been the individual who was in the vicinity of Plaintiff's home on November 11, 2014.[9]  Am. Compl. ¶ 30.  Second, the proposed Amended Complaint elaborates on the content of the text messages sent by Wang and adds a state law cause of action for intentional infliction of emotional distress.  *Id.* ¶¶ 24-29, 43-46.  With respect to his FLSA retaliation claim, Plaintiff has set out essentially the same facts twice, and, as discussed *supra*, the facts are insufficient to state a cause of action for retaliation under the FLSA.

      Because Plaintiff has failed to state a federal cause of action under the FLSA, the Court will not retain jurisdiction over Plaintiff's state law claims, and those are also dismissed.  Furthermore, because the claims are dismissed, the Court need not consider the parties' arguments regarding whether Section 215(a)(3) can be applied against Wang as an agent of Plaintiff's former employers.

## CONCLUSION

      For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's FLSA claim is GRANTED with prejudice; Defendants' Motion to Dismiss Plaintiff's NYLL claim is

---

[9]     The Introduction to Plaintiff's proposed Amended Complaint alleges violations of both the FLSA and NYLL anti-retaliation provisions against Empire Szechuan and King but a violation of only NYLL § 215 against Wang.  Am. Compl. ¶¶ 1-2.  In the First Claim For Relief, however, Plaintiff alleges that all three of the Defendants violated FLSA § 215(a)(3), as does the original Complaint.  Am. Compl. ¶¶ 35-37; Compl. ¶¶ 29-33.  The Court finds these inconsistencies irrelevant to the determination that Defendants' alleged conduct did not violate Section 215(a)(3).

GRANTED without prejudice; and Plaintiff's request to amend his Complaint is DENIED.  The

Clerk of Court is respectfully directed to close all open motions and terminate the case.


**SO ORDERED.**

**Date:  August 4, 2015**                                                                    VALERIE CAPRONI
**         New York, New York**                                                    United States District Judge